**Betty Jane Neal RIDDICK (Terry)**

v.

**Danny Joe RIDDICK.**

**Betty Jane TERRY, Appellant,**

v.

**Mr. and Mrs. D. J. RIDDICK, Appellees.**

Court of Appeals of Tennessee, Western Section.

Feb. 7, 1973.

Rehearing Denied March 5, 1973.

Certiorari Denied by Supreme Court July 16, 1973.

Dwayne D. Maddox, Huntingdon, Edward Witt Chandler, McKenzie, for appellant.

W. H. Lassiter, Maddox, Lassiter & Jones, Huntingdon, for appellees.

MATHERNE, Judge.

The petitioner Betty Jane Riddick Terry seeks the custody of her two minor children, Diana, age 8 years and David, age 7 years, which children had previously been placed in the custody of their father, Dr. Danny Joe Riddick, who was killed in an automobile accident on May 26, 1972. The petition for change of custody was filed on June 1, 1972, in the original divorce action styled Betty Jane Riddick v. Danny Joe Riddick in the Chancery Court of Carroll County, Tennessee. On June 24, 1972, the mother also filed in the same chancery court a petition for writ of habeas corpus against Mr. & Mrs. D. J. Riddick, the father and mother of Dr. Danny Joe Riddick, deceased, which parties the petitioner alleged were illegally restraining her two minor children. A writ was issued to have the body of each child before the Court on June 24, 1972, at 10:00 a. m. At the June 24, 1972 hearing on the writ of habeas corpus, Honorable Aaron C. Brown, Chancellor recused himself, and requested of the Supreme Court of Tennessee the appointment of a chancellor to hear the matter on June 28, 1972, at 9:00 a. m. Chancellor Brown did commit the custody of the two children to the mother, Betty Jane Riddick Terry, until the date of the hearing on June 28, 1972, because of the change in circumstances since the final divorce decree entered in the original lawsuit of Riddick v. Riddick.

On June 28, 1972, Honorable Grooms Herron, Chancellor by interchange, consolidated the petition for change of custody and the hearing on writ of habeas corpus, and after a hearing on the merits did enter a decree vesting the custody of the two minor children in their paternal grandparents, Mr. and Mrs. D. J. Riddick, and dismissed the writ of habeas corpus. The Chancellor further decreed the petitioner would have reasonable visitation privileges with her children, but the petitioner was enjoined from having the children in the presence or company of Raymond Terry, Jr. at any time. The decree further provided for the establishment of a trust for the preservation of approximately $188,000 from certain life insurance policies on the life of Dr. Riddick. The petitioner on appeal attacks that part of the decree which denied her custody of the children and vested custody in the paternal grandparents.

The facts establish the original divorce decree was entered on December 1, 1969, which granted Dr. Riddick a divorce on the ground of adultery. The record further establishes the party with whom the petitioner, Dr. Riddick's wife, committed adultery was Raymond Terry, Jr. The petitioner testified in the present lawsuit that she and Raymond Terry, Jr., were married in the State of Mississippi in the month of January, 1970.

The petitioner presented proof from which it could be concluded that she and Raymond Terry, Jr. own a comfortable new colonial type home located on 150 acres of land in the Cedar Grove community of Carroll County. The parties have some money on savings, and are farming the land. The attorneys stated on oral argument that Mr. Terry is now employed as the manager of a restaurant, that having been his occupation prior to moving to the farm. The petitioner established to the satisfaction of this Court that she and Raymond Terry, Jr. have the means to financially support and care for the children. The petitioner also established to the satisfaction of this Court that she has conducted herself in a proper manner since returning to Carroll County with Raymond Ter-

ry, Jr. in the summer of 1971. The petitioner has also satisfied this Court that she loves her children and that they love her.

Mr. and Mrs. D. J. Riddick, the paternal grandparents, are 63 and 64 years of age, respectively. Their home is at Humboldt, Tennessee, where Mr. Riddick is in the business of selling electrical appliances and furniture. These parties convince the Court they have the financial means to support the children, and they have the welfare of the children at heart. The Riddicks have lived in the home of their son, Dr. Riddick, at Huntingdon, Tennessee since January, 1972 for the purpose of Mrs. Riddick looking after the children. Mr. Riddick drives from Huntingdon to Humboldt to attend to his business. The record is not clear, but we conclude these parties plan to live in Humboldt with the children. The grandparents are people of good reputation and are competent physically, mentally and morally to have the custody of the children. We would observe that Mr. Riddick, the grandfather, displays a non-compromising, unforgiving attitude accompanied by a quick temper which is not appreciated by this Court in the light of the best interest of these children.

In lawsuits involving the custody of minor children, the determinative issue is the welfare of the children. Our Supreme Court in Smith v. Smith (1949) 188 Tenn. 430, 436, 220 S.W.2d 627, 629, stated: "Under modern law it is universally held that the parent has no absolute right to the custody of his own child. The courts uniformly have held that the question is the welfare of the child. (Citing authorities)" The rights, desires, and interests of the adult parties, parents, grandparents and others, seeking the custody of small children, are relegated to the background and are subordinated to what is considered to be in the best interest of the children.

On appeal to this Court we do not limit our review to whether or not the evidence preponderates against the decree of the trial court. That limitation of our review has been expressly held by our Supreme Court as being too narrow in a child custody lawsuit; but rather these lawsuits must be reviewed strictly *de novo*. Smith v. Smith, supra. In so reviewing a child custody lawsuit, this Court will, however, give great weight to the decision of the trial court because the judge saw the witnesses face to face and heard them testify; this rule being based upon the assumption that the trial judge did not act arbitrarily or willfully but with regard to what is right and equitable, considering first the child's best interest as directed by his reason and conscience toward the child's welfare. The foregoing is the basis and scope of our review in child custody lawsuits, any statement in Bevins v. Bevins (1964) 53 Tenn.App. 403, 383 S.W.2d 780, to the contrary notwithstanding.

A point which greatly disturbs this Court is the fact Raymond Terry, Jr. in whose home the petitioner proposes to move her two children, did not testify at this hearing, and neither did he join in the petition for the change of custody. The character, attitude and general personality of other persons who would be in a position to influence the children are important considerations for the court. Lacking a valid explanation for the absence of his testimony, we hold the petitioner under the duty to produce Raymond Terry, Jr., so that he might testify as to his willingness for the children to be in his home, and as to his occupation, finances, and other relevant facts. This element of proof cannot be negatively met by the showing of a lack of evidence that Raymond Terry, Jr. is not willing to have the children in his home. It is true the mother seeks the custody, but a court cannot overlook the situation in which that custody will place the children.

Another point which causes concern to this Court as to the best interests of these children, should custody be vested in the petitioner, is the provisions of T.C.A. § 36–831, and the possible effect thereof on

the present marriage between the petitioner and Raymond Terry, Jr. That statute provides:

"When a marriage is absolutely annulled, or dissolved, the parties shall severally be at liberty to marry again; *but a defendant who has been guilty of adultery shall not marry the person with whom the crime or act was committed, during the life of the former husband or wife.*" [The emphasized verbiage was stricken from the statute by Ch. 347, § 1 Public Acts 1970 (Adj. S.) effective January 30, 1970.]

The records reveals the petitioner married Raymond Terry, Jr. in the month of January, 1970 in the State of Mississippi. The record does not reveal whether the 1970 amendment to the above statute was in effect or not at the time of the petitioner's second marriage. The validity of the petitioner's second marriage is not directly in issue, but under the holding in Bennett v. Anderson (1936) 20 Tenn.App. 523, 101 S. W.2d 148, and the authorities therein cited, the second marriage would be void under the statute as worded prior to the 1970 amendment. Thus is raised a serious issue as to whether the petitioner and Raymond Terry, Jr., under the facts, might be subject to prosecution for the common law offense of lewdness. Pennegar and Haney v. State (1889) 87 Tenn. 244, 10 S.W. 305. If so, it would appear ill advised to place the petitioner's two children by her former marriage into that type situation. Again we are faced with a lack of evidence in the record. Under this record, there is no duty on this Court to assume the marriage valid or invalid; there was a duty on the parties to prove that fact. Looking to the best interest of these children, we cannot at this time justify exposing them to the ill effects of an invalid marriage, and under the proof that just might be the situation.

We therefore affirm the award of custody to the paternal grandparents as being under this record to the best interests of these children at the present time. We do not pass upon any other provision of the Chancellor's decree, and this cause is remanded to the Chancery Court of Carroll County, Tennessee, for such further proceedings as required by law. The cost of this appeal is adjudged against the appellant.

CARNEY, P. J., and NEARN, J, concur.

## ON PETITION TO REHEAR

Betty Jane Terry filed a Petition to Rehear which does no more than to rehash what has already been covered. The petition is overruled at the cost of the petitioner.

CARNEY, P. J., and NEARN, J., concur.