James Kenneth BRYAN,
Plaintiff-Appellant,

v.

Carolyn Anne Lane BRYAN, Deceased, Bruce and Opal Lane, and Carlos and Linda Taylor, Defendants-Appellees.

Court of Appeals of Tennessee,
Middle Section.

May 1, 1981.

Appeal Denied by Supreme Court
Aug. 24, 1981.

Oscar B. Hofstetter, Jr., Nashville, John B. Bond, Brownsville, for plaintiff-appellant.

Jere C. Gordon, Kenton, C. Thomas Hooper, III, Brownsville, for defendants-appellees.

## OPINION

CANTRELL, Judge.

The natural father of a four year old child sought custody of the child after the death of the natural mother to whom custody had been given in a divorce action. The Trial Judge awarded joint custody to the maternal grandparents and the deceased mother's sister and her husband.

The appellant and the deceased mother of the child were divorced in Brownsville, Tennessee on September 29th, 1975 when the child was five months old. The divorce decree awarded custody of the child to the mother and ordered the appellant to pay $200.00 per month as child support. Three days later the appellant married his present wife, the mother of two children, and they started a new life in Memphis where the appellant worked temporarily at the United States Post Office. In 1977, after seven months of unemployment, the appellant and his wife were hired as house parents for the Tennessee Baptist Children's Home in Franklin, Tennessee. Then in April of 1978 the appellant went to work at the Hermitage Branch of the First American National Bank of Nashville where he remains to the present time. He also serves as Minister of Music at a Baptist Church in Nashville and as a distributor for the Newspaper Printing Corporation of Nashville.

The appellant's ex-wife was killed in an automobile accident on July 26th, 1979. On July 31st, 1979, the appellant filed a petition seeking to have custody awarded to him, alleging that the child was in the custody of her maternal grandparents. The grandparents answered along with their daughter and son-in-law and sought joint custody of the child.

At the hearing the appellant admitted that after the divorce and until his ex-wife's death he made a conscious deliberate choice not to exercise his rights to visit with his daughter. It was, he thought, in her best interest to allow her to settle down to living with her mother free of the conflicts that would inevitably arise if she were uprooted periodically to visit with him. Consequently he saw the child only once after the divorce until the death of her mother. On that occasion he was surprised to find her at his parents' house on a holiday and he expressed to his father his disappointment over finding her there. After that time when the appellant visited his parents' home he always called first to make sure the child was not present.

Both sides offered other proof at the hearing relative to the condition in the re-

spective homes. The Department of Public Welfare investigated the conditions in the respective homes. Their reports are in the record.

The Chancellor denied the appellant's petition for custody and awarded custody to the maternal grandparents and their daughter and son-in-law jointly. The appellant was given "reasonable" visitation rights during daylight hours only and was ordered to continue paying $200.00 per month in child support.

The appellant asserts that it was error for the Trial Court to refuse custody to him, the natural father.

■ There is and, we think, should be a preference for natural parents in child custody cases where nothing appears from the record against the natural parents having custody. This is the position our Supreme Court has taken in the case of *Stubblefield, et al. v. State, ex rel.*, 171 Tenn. 580, 106 S.W.2d 558 (1937), where the Court said:

A parent who is of good character and a proper person to have the custody of the child and is reasonably able to provide for it ordinarily is entitled to the custody as against other persons and this rule applies although such others are much attached to the child and the child is attached to them, and prefers to remain with them, and they are in all respects suitable to have the custody of the child and able to support and care for it, or even though they are better able to afford the child material advantages.

■ This preference for natural parents, however, must, as all other considerations must, give way to the best interests of the minor child. In *Smith v. Smith*, 188 Tenn. 430, 220 S.W.2d 627 (1949), our Supreme Court said:

Under modern law it is universally held that the parent has no absolute right to the custody of his own child. The courts have uniformly held that the question is the welfare of the child.

In *Riddick v. Riddick*, 497 S.W.2d 740 (Tenn.App.1973), the Court said:

The rights, desires and interests of the adult parties, parents, grandparents and others seeking the custody of small children are relegated to the background and are subordinated to what is considered to be in the best interest of the children.

The role of the appellate courts in attempting to reconcile the rules of law quoted above and to come to a decision about the best interests of the child has been clearly stated by the Court of Appeals in *Riddick, supra* :

On appeal to this Court we do not limit our review to whether or not the evidence preponderates against the decree of the trial court. That limitation of our review has been expressly held by our Supreme Court as being too narrow in a child custody lawsuit; but rather these lawsuits must be reviewed strictly *de novo. Smith v. Smith, supra.* In so reviewing a child custody lawsuit, this Court will, however, give great weight to the decision of the trial court because the judge saw the witnesses face to face and heard them testify; this rule being based upon the assumption that the trial judge did not act arbitrarily or willfully but with regard to what is right and equitable, considering first the child's best interest as directed by his reason and conscience toward the child's welfare. The foregoing is the basis and scope of our review in child custody lawsuits, any statement in *Bevins v. Bevins*, 53 Tenn.App. 403, 383 S.W.2d 780 (1964), to the contrary notwithstanding.

■ In reviewing the record in this case we cannot say without simply substituting our own judgment for that of the Chancellor that he was wrong in awarding custody as he did. The joint custody order of the Chancellor is unusual but he had the witnesses before him and could observe the parties and there is ample evidence in the record that the child is doing well under the arrangement which the Chancellor adopted as being in her best interests. The appellant declined, almost refused, to see or be in the presence of the minor child for nearly four years prior to her mother's death.

This fact obviously contributed to the Chancellor's decision. The proper weight to be given to that fact in the context of all of the circumstances in the record is within the discretion of the Chancellor. Therefore we are of the opinion that the decree of the Chancellor should be affirmed.

 While the appellant does not raise an issue about the "reasonable" visitation rights given him during daylight hours only, we feel compelled to comment on this aspect of the case. We feel it is important and in the best interest of the child that a relationship be established with her father. Under the present order this will present a sizeable hardship to him—which, under the circumstances, may be as it should be. In view of all that has gone on in the past Mr. Bryan needs to convince the court, the parties, and, most of all, his daughter that his concern for her is genuine. If his concern is genuine the court's restrictions on visitation will not be much of an obstacle. To the extent that the order prevents their relationship from growing and developing normally after a reasonable time, relief from the order can always be sought in the Trial Court.

The appellant also complains of the Chancellor's requirement that he pay $200.00 per month support for the months between the death of his ex-wife and the date of hearing. Although there is no order in the record to that effect it is apparent from the transcript that the Chancellor thought the appellant should purge himself of contempt by paying the arrearage before the hearing proceeded.

While there was no obligation of record to require the appellant to continue making the support payments we are also of the opinion that it was within the discretion of the Chancellor to order them paid since the grandparents had actually had custody of the child for the period of time in question.

For all of these reasons the decree of the Chancellor is affirmed and the case is remanded to the Chancery Court of Haywood County, Tennessee for further proceedings

as are required. The costs of the appeal are taxed to the appellant.

AFFIRMED AND REMANDED.

LEWIS and CONNER, JJ., concur.