IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 2000 Session

## JERRY WAYNE KILLION v. SANDRA FAYE SWEAT

**Appeal from the Chancery Court for Campbell County**
**No. 11,884    Robert M. Summitt, Judge, By Designation**

**FILED SEPTEMBER 21, 2000**

**No. E1999-02634-COA-R3-CV**

In this post-divorce proceeding, the father of Dustin Lynn Killion filed a petition seeking the child's custody. The trial court denied the father's petition. The father appeals the trial court's determination that the proof fails to demonstrate a material change of circumstances warranting a change of custody. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Cecilia S. Petersen, Knoxville, Tennessee, for the appellant, Jerry Wayne Killion.

J. Terry Holland, Knoxville, Tennessee, for the appellee, Sandra Faye Sweat.

**OPINION**

I.

Jerry Wayne Killion ("Father") and Sandra Faye Sweat ("Mother") were divorced in 1987 after six years of marriage. In the final judgment of divorce, Mother was awarded custody of the parties' minor child, Dustin Lynn Killion (DOB: August 19, 1984). Father, who was then unemployed, was granted visitation with the child and ordered to pay child support of $30 per week or 30% of his salary when he became employed. In March, 1998, the State of Tennessee, on behalf of Mother, filed a petition alleging that Father was in arrears in his child support obligation. The State also sought an increase in child support to conform Father's obligation to the Child Support Guidelines. In September, 1998, an agreed order was entered, in which Father's arrearage was set at $8,905. Father's child support obligation going forward was increased to conform to the Guidelines. Father was ordered to pay $496.65 per month, which included $348 for current child support, $125 on the arrearage, and a clerk's fee of $23.65.

In August, 1998, while the support matter was still pending, Father filed the instant petition. His petition to modify is based primarily on Dustin's poor school attendance and performance. At the time of trial, Dustin was in the ninth grade. His most recent math grade was a D. He was enrolled in math resource classes. His competency scores ranked him in the lower 50th percentile for both math and English. As of January, 1999, he had five absences and six tardies to first period classes for the 1998-1999 school year. In the sixth grade, Dustin had 14 absences; in the eighth grade, he had 19. His final grades for the past year of school were a D in Science; a B in History; a B+ in Reading; an A in Physical Education; a B in Health; a C in Teen Living; a C in Language Arts; and a D in Mathematics. On his report card, a notation was made by his math teacher that Dustin "comes to class unprepared."

Mother testified that she tries to get Dustin to school on time, but it is difficult to wake him in the morning. She testified that she has asked him to bring his books home so she and her husband could help him with his homework, but that the child has told her that the teachers give him time to do his homework at school. She further testified that she used to try to get Dustin to do his homework as soon as he got home from school, but that the two of them would always end up "fussing and fighting." She testified that his absences during the current and prior school years were due to illnesses. When asked whether she thought that these absences were problematic, she replied, "He passed."

Father testified that he lives approximately two miles from Dustin's school and that he was sure he could get Dustin to school on time. Father stated that he intends to supervise Dustin's homework and would require Dustin to complete his homework as soon as he comes home from school. He stated that Mother does not try to get Dustin to school on time and does not check his homework. Father stated that there would be repercussions, such as a delay in getting a learner's permit or loss of phone privileges, if Dustin refused to do his homework or get to school on time.

The evidence indicates that Mother has on several occasions listened in on Dustin's phone conversations with Father and that the stepfather has threatened to deprive Dustin of visitation with Father for not finishing chores. There is also evidence that Mother has made disparaging remarks to the child concerning Father. Dustin testified that Mother has told him, "you're just like your father. I hate your father." Dustin testified that recently Mother told him during an argument that she hated Father and that "she has tried to be mean to me to get to my father because I'm so much like my father. That's the only way that she could get ahold of him." He stated that Mother's remarks have pushed him away from her. Mother admitted to listening in on phone calls and making derogatory comments to Dustin about Father. She stated, however, "I've never told him anything that wasn't true" and that she usually says such things only when she gets mad at Dustin for not obeying.

At trial, Dustin stated that he preferred to live with Father. He testified as follows:

Just the fact that hurting my mom and everybody else is killing me. I don't want to do anything to hurt them, but I do want to live with

my dad because I love my dad too. And everybody is saying -- trying to be mean to him like he's Satan or something. They say, "Well, he don't love you as much as your mom," or "He wouldn't love you as much as your mom." And that's just driving me up a wall.

Both parents have remarried. Father and his wife have another son, Michael. Father stated that Michael and Dustin are very close. Dustin reported having good relationships with his half-brother and both stepparents. Dustin stated that he gets along with his stepmother, although he probably talks more to his stepfather by virtue of the fact that they live together. The stepfather stated that he is "very close" to Dustin. The stepmother did not testify.

The trial court found that Father had failed to prove that a material change of circumstances had occurred. It dismissed Father's petition[1] and awarded Mother attorney's fees. Although the child expressed a desire to live with Father, the court opined that the child's reason for so testifying was, at least in part, that Mother and her husband "talked about [his] daddy so bad that [he] feel[s] like somebody ought to take up for him." The court also noted that the child had stated that if he lived with Father, he would be more likely to get to school on time because Father's house is closer to school. The court remarked that "[i]f we [change custody] now, then he's going to have gained a dad, what he wanted, by not going to school properly." In making its determination, the court stated that it also considered "the fact that [Father] hasn't done all he could to support this boy over the years." While acknowledging Dustin's problems with school performance and attendance, the court concluded that there is "some evidence, but it's not sufficient to change custody."

II.

In order to modify a prior order of custody, "the trial judge must find a material change in circumstances that is compelling enough to warrant the dramatic remedy of changed custody." *Musselman v. Acuff,* 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991). Since this is a non-jury case, we must decide if the evidence preponderates against the trial court's decision not to change custody. Tenn. R. App. P. 13(d); *see also* **Hass v. Knighton,** 676 S.W.2d 554, 555 (Tenn. 1984). The best interest of the child is the paramount consideration. **Brumit v. Brumit,** 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997).

Father's petition to modify custody addressed itself to the wide and sound discretion of the trial court, and "we will not tamper with that discretion unless the facts demonstrate that the trier of fact has abused his or her discretion." *Id.* However, in the final analysis, the issue for us is whether the evidence preponderates against the trial court's decision.

---

[1] Father had also filed a petition for contempt, alleging that Mother had denied Father visitation over Thanksgiving with the child. The contempt petition was heard in conjunction with the instant petition to change custody. The trial court dismissed the contempt petition. Father has not appealed that order.

III.

We find that the evidence, much of which is not in dispute, preponderates against the trial court's determination that the proof fails to demonstrate a material change of circumstances warranting a change of custody. The evidence clearly reflects that Dustin has significant problems with his school work. His grades in the core subjects of science, math, and English have been C's and D's; his records indicate he often comes to class unprepared. Dustin has also been tardy to school or absent on many occasions. The evidence preponderates that Father should be able to provide Dustin with more structure and discipline in regard to homework and school attendance.

We also find it significant that Dustin, then a ninth grader, expressed a clear desire to live with Father. While a child's preference is not conclusive evidence in a custody proceeding, it is certainly a relevant consideration. *Hardin v. Hardin,* 979 S.W.2d 314, 317 (Tenn. Ct. App. 1998).

We find that a change of custody is also warranted by the disparaging remarks made by Mother to the child, which remarks are basically undisputed. "Custody and visitation arrangements should promote the development of a healthy relationship between children and both their parents." *Solima v. Solima,* 7 S.W.3d 30, 33 (Tenn. Ct. App. 1998). In making a custody determination, a court should consider "the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child." T.C.A. § 36-6-106(10) (Supp. 1999). Dustin has a right to a "close and continuing" relationship with Father. Mother's disparaging remarks, however, have had a profoundly negative effect on the child. Dustin testified that "they" -- presumably Mother and his stepfather -- are mean to Father "like he's Satan." He also testified that Mother has told him that he is just like Father and that she hates Father. Although Mother's statements apparently have not affected Dustin's relationship with Father, Dustin admitted that these comments have driven him away from Mother, with whom he is also entitled to a "close and continuing" relationship.

While Mother may have made these derogatory statements in the "heat of the moment," at a time when she was simply angry or frustrated with Dustin, it is an inescapable conclusion that such comments are emotionally damaging to the child. On the other hand, we do not find any evidence to indicate that Father has disparaged Mother or otherwise attempted to hinder the development of a close relationship between Dustin and Mother. In *Varley v. Varley,* 934 S.W.2d 659, 667 (Tenn. Ct. App. 1996), this Court affirmed a trial court's award of custody of the parties' children to the father in part because of the mother's "blatant attempt to alienate the affections of the children from their father." In so holding, this Court noted as follows:

> When loved by both parents, children should be taught to love and
> respect each parent equally. This reciprocation, in turn, will garner
> self respect and a positive self image in the children. The record in

this case lends absolutely no reason as to why the children should not be encouraged to respect and love their father....

We believe it in the best interests of these children that they maintain a loving and nurturing relationship with both parents. In light of the record, we do not believe that such can be accomplished by an award of custody to Wife at this time. It goes without saying that in many, if not most, cases of divorce, one may expect a certain amount of animosity between the divorcing parties. This case is no different. However, when children are involved, it is imperative that the parents set aside their hostilities where the children are concerned, for the sake of the children.

*Id.* at 667-68. We find that it is in Dustin's best interest that he have a healthy relationship with both parents. In light of the record, we believe that this can be best accomplished by an award of custody to Father.

The trial court remarked that in making its determination it considered the fact that Father was in arrears in his child support obligation. Although a parent's past performance of providing for a child is a valid consideration in making a custody decision, *see* T.C.A. § 36-6-106 (2) and (10) (Supp. 1999), custody should not be denied in order to punish a parent, nor should custody be awarded to reward a parent. ***Adelsperger v. Adelsperger,*** 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). In light of all the relevant factors, we find that, despite Father's child support arrearage, the evidence preponderates that the best interest of the child warrants a change of custody in this case. The child's age, his expressed desire to live with his father, a lack of evidence reflecting poorly on Father's ability to parent Dustin, the child's poor school performance and attendance, and Mother's disparaging comments about Father and indirectly about Dustin, reflect a change of circumstances and tip the scales in favor of a change of custody.

Mother takes issue with the fact that Father's current spouse was not a party to this action and did not testify at the hearing below. Mother argues that ***Riddick v. Riddick,*** 497 S.W.2d 740 (Tenn. Ct. App. 1973), stands for the proposition that custody cannot be changed if the spouse of the parent seeking custody does not participate in the hearing. In ***Riddick,*** this Court stated as follows:

A point which greatly disturbs this Court is the fact Raymond Terry, Jr. in whose home the petitioner proposes to move her two children, did not testify at this hearing, and neither did he join in the petition for the change of custody. The character, attitude and general personality of other persons who would be in a position to influence the children are important considerations for the court. Lacking a valid explanation for the absence of his testimony, we hold the petitioner under the duty to produce Raymond Terry, Jr., so that he might testify as to his willingness for the children to be in his home,

and as to his occupation, finances, and other relevant facts. This element of proof cannot be negatively met by the showing of a lack of evidence that Raymond Terry, Jr. is not willing to have the children in his home. It is true the mother seeks the custody, but a court cannot overlook the situation in which that custody will place the children.

*Id.* at 742.

We find Mother's argument to be without merit. There is no absolute requirement in the law that a stepparent must testify in every instance where custody is sought to be changed, although certainly the character and behavior of a stepparent is a relevant consideration in a custody determination. *See* T.C.A. § 36-6-106(9) (Supp. 1999). In the instant case, there was evidence indicating a positive relationship between the stepmother and Dustin. Father's testimony also reveals that the stepmother would be involved in picking Dustin up at school. We further note that there was no negative testimony regarding the stepmother. Thus, the mere fact that the stepmother did not testify does not preclude our finding that a change of custody would be in the best interest of the child. While the failure of a stepparent to testify could, in a given case, be sufficient to block a change of custody to that stepparent's household, such is not the case here.

Mother seeks attorney's fees on this appeal. Because we find that custody should be changed to Father, such an award would not be appropriate. We also find that the evidence preponderates against such an award for services performed by Wife's counsel in defense of the petition to change custody.

IV.

The judgment of the trial court, including the award of fees to mother on the custody issue, is reversed. Costs on appeal are taxed to Mother. Custody of the child is changed immediately from Mother to Father. Father's child support obligation going forward is hereby terminated effective as of the date of the release of this opinion. This case is remanded to the trial court so it can address the issues of Mother's visitation and her child support obligation to Father and for such further proceedings as may be required, all pursuant to applicable law.

_____
CHARLES D. SUSANO, JR., JUDGE

-6-