IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 4, 2000 Session

## ROBERT CARL COVERT v. KIMBERLY MARIE BRUGGER COVERT

**Appeal from the General Sessions Court for Blount County**
**No. S-5149      William R. Brewer, Jr., Judge**

---

**No. E2000-00864-COA-R3-CV**
**FILED DECEMBER 27, 2000**

---

Mother and Father were divorced and Mother moved to Oklahoma with the two minor children. A Marital Dissolution Agreement was incorporated into the final decree. The MDA provided that in return for Mother giving up all rights to Father's military retirement pay, Father would pay all marital debt. Father's separation from the military was anticipated at the time of the divorce. Father received severance pay upon his separation, not retirement pay because he only had 17 years of service. The Trial Court found that the pay Father received upon his separation was severance pay rather than retirement, and was considered income for the purposes of determining child support. The Trial Court, however, did not award Mother any of the pay for child support. The Trial Court also ordered Mother to either provide transportation for the children one way from Oklahoma on two major visitations per year or Father was to receive credit of $200 against his child support for providing transportation both ways. Mother appealed. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3; Judgment of the General Sessions Court affirmed; cause remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., joined. CHARLES D. SUSANO, JR., J., filed a concurring opinion.

Gerald C. Russell, Maryville, Tennessee, for the appellant, Kimberly Marie Brugger Covert

Virginia A. Schwamm, Knoxville, Tennessee, for the appellee, Robert Carl Covert

### OPINION

### I. FACTS

The parties were married on May 25, 1985. Two children were born to the marriage; one, on November 4, 1985 and a second on August 9, 1989. The parties separated in October 1997. On

December 16, 1997, the Trial Court entered a final judgment of divorce, which incorporated the Marital Dissolution Agreement.

The Marital Dissolution Agreement provided for the parties to jointly share in the care, custody, and control of their minor children. While Mother had primary residential custody of the children, Father had "very liberal co-parenting time." Father was to pay child support of $900 per month, an amount that was in compliance with the Child Support Guidelines, until his separation from the military, at which time it was to be re-evaluated. The following sections of the Marital Dissolution Agreement are pertinent to the issues on appeal.

Section 4, ¶ 2.
    The parties acknowledge that Husband will be leaving the military on or about March 1, 1999. Accordingly, the parties agree to re-evaluate Husband's child support obligation in light of the circumstances of the parties on that date. The parties, however, agree that for the purposes of the re-evaluation as of March 1, 1999, that they agree to waive the fifteen percent (15%) statutory threshold and agree that the Guidelines then in force shall be applied on that date.

Section 12.
    The parties owe the following debts: Visa, Bankcard, Mastercard, Visa, student loans, personal loans, and for the Chevrolet van. Said debts total approximately Forty-Three Thousand Dollars ($43,000.00). Husband shall be responsible for the payment of all of these debts. He shall indemnify and hold Wife harmless from the claims of any of these creditors.

Section 15.
    Husband has a retirement program with the United States Army. In exchange for Husband's assumption of all the debt now owed by the parties, this retirement plan shall be awarded to Husband as his sole and exclusive property. All right, title and interest of Wife in and to said retirement plan is hereby divested out of her and vested in Husband. Wife shall execute any and all documents necessary to convey her interest in said plan to Husband.

Father officially was separated from the United States Army on April 1, 1999.[1] In order for Father to obtain his separation pay of approximately $44,000, Father had to enlist in the United States Army Reserves for three years. As a member of the United States Army Reserves, he serves one weekend a month and attends a two week summer camp. Since his separation Father has not been able to find permanent employment. He has applied for both civilian and military positions. In order to supplement his income, Father flies short notice missions for the United States Army

---

[1]At the time of the divorce, Father and Mother anticipated that Father would leave the United States Army because he had been passed over for promotion three times in a row. At the time of his automatic termination, he had a total of 17 years of military duty. For 12 of those years he was married to Mother.

Reserves and Army National Guard as well as other types of missions, for which he receives one day's pay for each mission. His unemployment benefits of $255.00 per week are reduced by the amount he earns each week.

While disputed, the evidence at trial indicated that if Father stopped serving in the United States Army Reserves, he would be required to repay the $44,000. Also if he acquired another military position, for which he had applied, and obtained enough time to retire (20 years), he would not receive his retirement pay until the $44,000 he received as severance pay had been repaid to the government.

Mother acknowledged at trial that she was aware that Father would be leaving the United States Army at the time the Marital Dissolution Agreement was drafted. It was unrefuted that Mother knew Father would receive approximately $44,000 upon his separation from full time military employment.

One weekend a month since the divorce, Father traveled to visit his children in Oklahoma. From Father's home in Tennessee to Oklahoma is approximately 738 miles one way. At times Mother did not allow Father to see his children once he got there.

## II. POST-DIVORCE PROCEEDINGS IN THE TRIAL COURT

Since the divorce, the relationship between Father and Mother has been very rancorous. On April 29, 1998, Mother filed a petition for contempt averring that Father had fallen seriously behind in the payment of the marital debt which Father assumed pursuant to the Marital Dissolution Agreement and that creditors were looking to Mother for payment.

On May 27, 1998, Mother filed a petition seeking a change in the visitation schedule based upon Father having his girl friend and her child present during overnight visitation.[2]

On January 25, 1999, Father filed a petition to modify the Marital Dissolution Agreement averring that the parties had an oral agreement, which was not subsequently incorporated into the written agreement, wherein Father would exercise one weekend per month co-parenting time with the minor children. Father would drive to Oklahoma to visit the children only to be told by Mother that she would not allow visitation that weekend. Mother refused to send appropriate clothing so that Father could take the children to church. Mother refused to let the children bring any personal possessions or toys with them on visits. Mother made derogatory and deprecatory statements about Father to children. Father requested that the costs associated with transportation for visitation with the children be divided equally between the parties. He sought modification of his child support obligation in accordance with the guidelines upon his leaving the United States Army.

---

[2]Father and his girl friend have since married.

On May 11, 1999, Mother filed a motion for contempt in that Father dropped the dental insurance on the children, refused to pay anything on dental expenses , refused to pay child support as ordered and removed the parties' children as beneficiaries on the $100,000 insurance policy. She also wanted to change Father's summer visitation with children and sought 50% of Father's severance pay from the military.

On June 11, 1999, Father filed an amended petition to modify the Marital Dissolution Agreement asking the Trial Court to order, *inter alia*, Mother to consult with and obtain Father's agreement prior to obtaining elective medical treatments for the children and for information concerning all persons providing medical care to the children. On the same day, Father filed an answer to Mother's motion for contempt.

Mother filed an answer to Father's petitions to modify on July 1, 1999.

A hearing was held on July 27, 1999. The court entered a memorandum opinion. As pertinent here the court found the following:

> With a word about the separation pay, the separation pay the Court finds is something that, while it may have been discussed, it wasn't set out in the final decree of divorce in any manner. It may have been something anticipated, but, you know, they anticipated a lot of things. They didn't put this in here. So I don't find that it's any kind of part of the marital estate that could have been divided or will be divided now. However, it certainly is, at this point in time, because of the contingencies that have not been fulfilled yet or that might be fulfilled, it's going to have to be considered as income. I dare say that Mr. Covert is going to have to list it on his income tax as income to him. Without hearing anything to the contrary the Court is going to have to anticipate that, for child support purposes in other words.
> . . .
> Now, with regard to what he should have been paying up through today – and I'm going to start the five hundred a month beginning next month in August. And it's a compromise. It's a compromise with regard to what – I'm considering the separation pay as to be income that he had. And I realize that, as I understand it, it's going. Well it's still income. It's for child support purposes. So he should – I'm not going to grant the motion to decrease until – I'm not going to back it up. I'm not going to make it retroactive. Like I said, I'm going to start it on August the 1st. I'm going to require him to continue to pay the income that he bargained for in the MDA. He should have paid thirty-six hundred from April, May, June and July. He's paid thirteen sixty-two. I'm going to find that he owes an arrearage of twenty-two thirty-eight.

The Trial Court entered a final order on September 13, 1999, to which Mother filed a motion to amend. When the parties could not agree upon the appropriate wording of the judgment, the Trial Court filed its own order on December 8, 1999. That order set forth a revised visitation schedule

with the children. Father was to pay for all travel expenses associated with his one weekend per month co-parenting time and all co-parenting time except for Christmas and Spring Break. For the Christmas and Spring Break co-parenting time, Father was to receive a $200.00 credit toward child support for the transportation. Child support was set at $500 per month beginning August 1, 1999. Child support arrearage was set at $2,238.00. Father was to pay the arrearage on or before December 31, 1999. The Trial Court found that there were "sufficient grounds to deviate from the Child Support Guidelines and the standard orders of the court with respect to visitation, transportation costs, and the financial obligations between the parties." All contempt allegations were dismissed with prejudice. Each party were order to paid their own attorneys' fees and court costs were divided.

On January 5, 2000, Mother filed a Notice of Appeal of the order entered on December 8, 1999.

### III. ISSUES

Mother presents two issues for our review.

1. After finding that Mr. Covert's $44,000.00 army separation pay was income for child support purposes, did the trial judge commit error by not awarding Ms. Covert a portion of it for child support?

2. Did the trial court commit error by requiring Ms. Covert to pay transportation costs of $400.00 per year for Mr. Covert to visit the parties' children?

Father contends that the $44,000 received by him upon his discharge from the United States Army were drawn against appellee's non-vested military retirement benefits and were awarded to the Father in the divorce.

### IV. LAW AND DISCUSSION

Our standard of review is *de novo* upon the record, with a presumption of correctness of the findings of fact by the Trial Court. Unless the evidence otherwise preponderates against the findings, absent an error of law, we must affirm the Trial Court's judgment. Hass v. Knighton, 676 S.W.2d 554, 555 (Tenn. 1984). Rule 13(d), Tennessee Rules of Appellate Procedure.

In a *de novo* review, the parties are entitled to a reexamination of the whole matter of law and fact. Where the evidence preponderates against the finding of the Trial Court, it is our duty to enter such decree as the law and evidence warrant. Perry v. Carter, 188 Tenn. 409, 219 S.W.2d 905 (Tenn. 1949); Toomey v. Atyoe, 95 Tenn. 373, 32 S.W. 254 (Tenn. 1895); American Buildings Co.

v. White, 640 S.W.2d 569 (Tenn. Ct. App. 1982); Thornburg v. Chase, 606 S.W.2d 672 (Tenn. Ct. App. 1980); Rule 36(a), Tennessee Rules of Appellate Procedure.[3]

However, the Trial Judge is in the "premier position" to determine credibility. Bowman v. Bowman, 836 S.W.2d 563, 567 (Tenn. Ct. App. 1991).

## A.

The core of this appeal is the classification of the approximate $44,000.00 that Father received as severance pay upon his separation from the United States Army. Mother seeks a portion of that money either as an asset that was not divided in the Marital Dissolution Agreement or as an increase in child support. The trial judge found that the $44,000 in severance pay was income for child support purposes.

In Gray v. Estate of Gray, 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998), this Court said:

> A marital dissolution agreement is essentially a contract between a husband and wife in contemplation of divorce proceedings. *See Towner v. Towner*, 858 S.W.2d 888 (Tenn. 1993). "A property settlement agreement between a husband and wife is 'within the category of contracts and is to be looked upon and enforced as an agreement, and is to be construed as other contracts as respects its interpretation, its meaning and effect.' " *Bruce v. Bruce*, 801 S.W.2d 102, 105 (Tenn. App. 1990) (quoting *Matthews v. Matthews*, 24 Tenn. App. 580, 593, 148 S.W.2d 3, 11-12 (1940)).

The interpretation of a written contract is a matter of law, rather than a matter of fact. *See* Hamblen County v. City of Morristown, 656 S.W.2d 331, 335-36 (Tenn.1983); Realty Shop, Inc. v. RR Westminster Holding, Inc., 7 S.W. 3d 581, 597 (Tenn. Ct. App. 1999); Standard Fire Ins. v. Chester O'Donley & Associates, Inc., 972 S.W.2d 1, 5-6 (Tenn. Ct. App.1998). The purpose of interpreting a written contract is to ascertain and to give effect to the contracting parties' intentions. Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc., 521 S.W.2d 578, 580 (Tenn. 1975); Realty Shop, Inc. v. RR Westminster Holding, Inc., 7 S.W. 3d 581, 597 (Tenn. Ct. App. 1999); Gredig v. Tennessee Farmers Mutual Ins. Co., 891 S.W.2d 909, 912 (Tenn. Ct. App.1994).

In the case of written contracts, these intentions are reflected in the contract itself. Thus, the search for the contracting parties' intent should focus on the four corners of the contract. *See* Whitehaven Community Baptist Church v. Holloway, 973 S.W.2d 592, 596 (Tenn. 1998); Hall v.

---

[3] Rule 36. Relief; Effect of Error.

(a) Relief To Be Granted; Relief Available. The Supreme Court, Court of Appeals, and Court of Criminal Appeals shall grant the relief on the law and facts to which the party is entitled or the proceeding otherwise requires and may grant any relief, including the giving of any judgment and making of any order; provided, however, relief may not be granted in contravention of the province of the trier of fact. . ..

<u>Jeffers</u>, 767 S.W.2d 654, 657-58 (Tenn. Ct. App.1988). The circumstances in which the contract was made are to be considered. *See* <u>Penske Truck Leasing Co. v. Huddleston</u>, 795 S.W.2d 669, 671 (Tenn.1990); <u>Pinson & Associates Ins. Agency, Inc. v. Kreal</u>, 800 S.W.2d 486, 487 (Tenn. Ct. App. 1990). All provisions of a contract should be construed as in harmony with each other, if such construction can be reasonably made, so as to avoid repugnancy between the several provisions of a single contract. <u>Bank of Commerce & Trust Co. v. Northwestern National Life Ins. Co.</u>, 160 Tenn. 551, 26 S.W.2d 135 (1930); <u>Rainey v. Stansell</u>, 836 S.W.2d 117, 118-119 (Tenn. Ct. App. 1992).

In this matter, we have difficulty harmonizing Section 12[4] of the Marital Dissolution Agreement with Section 15,[5] unless we consider the severance pay received by Father as the "retirement" plan referenced in the Marital Dissolution Agreement. Is it a coincidence that the approximate amount of the debt assumed solely by the Father is approximately the amount of the severance pay? We don't think so. If we did not construe the Marital Dissolution Agreement in this manner, Father would be left with agreeing to assume $43,000 of debt with no consideration, and Section 15 would be a nullity. Both Father and Mother testified that they knew Father would be leaving full-time military service early in 1999. Father testified, unrefuted by Mother, that the parties had discussed his failure to obtain promotion and his military employment being terminated, and that Father would receive approximately $44,000 when that event occurred.

In <u>Nunn v. Stone</u>, 356 So. 2d 1212 (Ct. Civ. App. Ala.1978), the relative provisions of the agreement of the parties incorporated into the divorce decree provided:

> "4. The parties agree that David Stone shall pay to Martha Jane Stone in advance the sum of $400.00 per month for the support, maintenance and education of the minor children. . .Provided, however, that upon the discharge of David Stone from the U.S. Army the total amount of child support to be paid by David Stone to Martha Jane Stone shall be reduced to $2000.00 per month, and such support shall continue as herein above provided.
> "5. It is hereby agreed between the parties hereto that upon the discharge of David Stone from the U.S. Army and upon his receipt of his separation pay and disability pay from the U.S. Army (by whatever name or term it is called) he shall pay to Martha Jane Stone an amount equal to 50% of such separation and disability money within thirty (30) days after such receipt by him. Suitable evidence will be provided

---

[4]Section 12. The parties owe the following debts: Visa, Bankcard, Mastercard, Visa, student loans, personal loans, and for the Chevrolet van. Said debts total approximately Forty-Three Thousand Dollars ($43,000.00). Father shall be responsible for the payment of all of these debts. He shall indemnify and hold Wife harmless from the claims of any of these creditors.

[5]Section 15. Husband has a retirement program with the United States Army. In exchange for Husband's assumption of all the debt now owed by the parties, this retirement plan shall be awarded to Husband as his sole and exclusive property. All right, title and interest of Wife in and to said retirement plan is hereby divested out of her and vested in Husband. Wife shall execute any and all documents necessary to convey her interest in said plan to Husband.

to Martha Jane Stone by David Stone to enable her to ascertain the amounts of money so received by David Stone."

Subsequent to the divorce, husband was removed from active duty and place on temporary disability retirement. He received no lump sum separation or disability pay, but was paid $750 per month; after being placed on permanent retirement he was paid $667 per month. Wife contended that husband was never "discharged" from the army, but was "retired from active duty," the condition provided in the agreement for the reduction of support from $400 to $200 per month had not occurred. She further contended that if it is considered that husband was discharged and child support was reduced to $200 per month, then husband was to pay her the additional sum of 50% of his disability retirement pay.

The Nunn trial court construed the agreement to intend that the $400 per month continued until the husband was released from active military service by whatever type of release was deemed appropriate by the army. This was the event which would cause a substantial reduction in the income of the husband, and child support should be set at $200 per month. The court further construed paragraph 5 of the agreement which referred to the receipt of separation pay and disability pay upon discharge to mean lump sum payments anticipated to be received upon or shortly after his discharge. The testimony disclosed that such anticipated lump sums were not forthcoming due to his retirement on disability rather than being severed by a full discharge. To have construed the agreement otherwise would have required the husband to pay the Mother from his retirement compensation the sum of $200 per month as child support and the further sum of 50% of such retirement or $333.50 per month. Husband would only retain $133.50 per month from his compensation payments. If Mother's contentions were sustained, the husband would have to pay her all of his disability compensation with a deficit of $66.50 per month. The appellate court considered that the trial court's construction of the agreement was reasonable and sufficiently supported by the evidence.

Unfortunately, in the case at hand, the parties did not refer to the retirement or separation pay as the parties did in the Nunn case ("by whatever name or term it is called"). We are confident, based on the record before us, that the separation pay was the "retirement" pay that was referenced in the Marital Dissolution Agreement. In no other way could the Martial Dissolution Agreement be interpreted to give both parties the benefit of the bargain contracted for in the agreement. Mother is entitled to no part of those funds. While the Trial Court found that the money was "severance pay" and subject to be considered under the Child Support Guidelines, he also found that "based upon the proof at trial, there are sufficient grounds to deviate from the Child Support Guidelines." We agree that the record in this case supports the Trial Court decision and award of child support.

B.

It was unrefuted at trial that Father would drive to Oklahoma (approximately 738 miles one way) to visit his children approximately one weekend a month. At times Mother would refuse to let

him visit with his children once there. The costs associated with Father's co-parenting time are in excess of $3,500 annually. Mother argues that the Martial Dissolution Agreement did not require her to provide any transportation or any costs associated with the Father's co-parenting time and that therefore it was the agreement of the parties that Father would provide and pay for all transportation. While this may have been the parties' understanding at the time of the divorce, we do not find this to be an impediment to a new arrangement going forward.

We note that Mother was not supportive of Father's co-parenting time. This Court as well as the Trial Court has a mandate to promote the development of the children's relationships with both the custodial and noncustodial parent. Rogero v. Pitt, 759 S.W.2d 109, 112 (Tenn. 1988). *See also* Bryan v. Bryan, 620 S.W.2d 85, 88 (Tenn. Ct. App. 1981) (relationship with a noncustodial parent); Dillow v. Dillow, 575 S.W.2d 289, 291 (Tenn. Ct. App. 1978) (relationship with a noncustodial parent). While this is not a custody case, Tenn. Code Ann. § 36-6-106(10) states:

> The court shall consider . . . (10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Father, in this case, has - with no pun intended - "gone the extra mile" in order to maintain relationships with both his children. We see nothing in this record that indicates that Mother is facilitating and fostering a close and continuing parent-child relationship between the children and Father. This Court encourages Mother to cast off her animosity toward Father, reconsider her actions in this regard and look to what is in the best interests of her children.

The Trial Court gave Mother a choice of either traveling to pick up the children or giving Father a credit against his child support when the children visited Father at Christmas and Spring Break. The Trial Court awarded Father a $400 credit against his child support for the costs of transporting the children during those co-parenting times.

Trial Courts are vested with wide discretion in matters of visitation. *See* Edwards v. Edwards, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973). Precedent precludes us from disturbing a lower court's determination on this issue absent a showing that the court below abused its discretion. *See* Suttles v. Suttles, 748 S.W.2d 427, 429 (Tenn. 1988). Because "custody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility" during the proceedings, appellate courts "are reluctant to second-guess a trial court's decisions." Gaskill v. Gaskill, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). The Trial Court did not abuse its discretion in this regard. We affirm the holding of the Trial Court.

## V. CONCLUSION

The decision of the Trial Court is affirmed.  This matter is remanded to the Trial Court for such further proceedings as may be necessary consistent with this opinion and collection of costs below.  Costs on appeal are adjudged against the appellant, Kimberly Marie Brugger Covert,  and her surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE