IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 1, 2001 Session

## ROBERT KEITH RICHARDSON v. DEBORAH ETTA RICHARDSON

**A Direct Appeal from the Circuit Court for Shelby County**
**No. 150511-7      The Honorable Robert A. Lanier, Judge**

_____

**No. W2000-02374-COA-R3-CV - Filed June 14, 2001**

_____

This is a post-divorce custody case. Father filed a petition for change of custody of the parties'
minor children alleging material change of circumstances. After a nonjury trial, the trial court denied
Father's petition, and Father appeals. We affirm.


**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed and
Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS,
J. joined and DAVID R. FARMER, J., joined by filing a separate concurring opinion.

Michael D. Moskovitz; Adam N. Cohen, Memphis, For Appellant, Robert Keith Richardson

Robert G. Millar, Dyersburg, For Appellee, Deborah Etta Richardson

**OPINION**

By decree filed March 13, 1996, Robert Keith Richardson ("Father") and Deborah Etta
Richardson ("Mother")were divorced. The decree incorporated a previously filed and executed
marital dissolution agreement, providing for joint custody of the parties' two minor children, Robert
Allen Richardson ("Allen"), born November 3, 1983, and Ashley Nicole Richardson ("Ashley"),
born August 11, 1987. Mother was designated as the primary custodial parent. Mother remarried
in 1996 to Mike Canada, ("Canada") and moved to Friendship, Tennessee with the parties two
children. In September of 1997, Father filed a petition to modify the final decree for a change in
custody of Allen. On December 11, 1997, an order was filed denying Father's petition and
modifying the final decree of divorce declaring Mother to be the lawful custodian of the two minor
children.

In August of 1998, Father filed a second petition to modify the final decree of divorce,
seeking custody of both of the parties' minor children. On March 17, 1999, the trial court entered
an order awarding Father legal custody of Allen but denied the request for a change of custody of

Ashley, stating that there was no evidence regarding the daughter's present condition or welfare, other than what could be implied from negative evidence about Mother's character.

While married to Canada, Mother became involved with a David Williamson and the children were aware of her relationship with him. In September of 1999, Mother divorced Canada and soon thereafter began dating Brad Wheatly ("Wheatly") who was married at the time, but no longer living with his wife. On April 12, 2000, Father filed a third petition with the trial court seeking custody of Ashley. On April 17, 2000, Mother married Wheatly, who had obtained a divorce in March of 2000 and had been granted custody of his four minor daughters, who now reside with Mother and Ashley.

After a nonjury hearing on August 18, 2000, the trial judge stated from the bench that Father's petition for a change of custody was denied. An order denying Father's petition was filed September 19, 2000. It is from this order that Father appeals, raising one issue, as stated in his brief: "Did the trial court err in refusing to modify the final decree of divorce and designate Father as the custodial parent of the parties' minor daughter?"

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. Rule 13 (d) T.R.A.P. This rule applies to child custody cases. ***Hass v. Knighton,*** 676 S.W.2d 554 (Tenn. 1984).

"In recognition of the importance of stability and continuity, custody and visitation decisions, once made and implemented are *res judicata* upon the facts in existence or reasonably foreseeable when the decision was made." ***Crabtree v. Crabtree,*** No. E2000-00501-COA-R3-CV, 2000 WL 816807 (Tenn. Ct. App. June 23, 2000) (citing ***Adelsperger v. Adelsperger,*** 970 S.W.2d 482 (Tenn. Ct. App. 1997) ***and Young v. Smith,*** 246 S.W.2d 93 (Tenn. 1952)).

Father contends that Wheatly committed perjury by testifying at his discovery deposition that he had not been charged with any crimes and later admitted at trial that he had been charged with and convicted of domestic violence in January of 1999, and theft in May of 1999. Father also asserts that although Wheatly testified at his deposition that he had not driven a motor vehicle since his license has been suspended, at trial he admitted to driving "maybe a foot," and a tape presented at trial evidenced Wheatly driving both a car and a motorcycle for distances greater than one foot.

Father asserts that Mother acknowledged that Wheatly played an important role in Ashley's life. Father argues that Wheatly does not set a good example for Ashley, evidenced by his perjury and convictions. Father asserts that Mother's marriage to Wheatly constitutes a material change in circumstance warranting an alteration of the previous custody arrangement. Father contends that Mother perjured herself in her deposition testimony when she claimed that Wheatly had not driven while his license was suspended. Father avers that Mother has set a bad example for Ashley by her own perjury and faults her for exposing both children to adulterous relationships since the initial award of custody. In addition, Father contends that the adverse effect of the separation of the

siblings pursuant to the order of March 17, 1999, granting Father custody of Allen constitutes a material change of circumstances warranting a change of custody. Finally, Father contends that even if no one factor alone is sufficient to constitute a material change of circumstances to warrant a change of custody, all factors taken together constitute a material change in circumstances. Father claims that Ashley's weight gain and personality change from an outgoing to a quiet child support his claims that her current home environment poses a threat to her well being. Father submits that the record shows that he is comparatively more fit than Mother as a parent.

Pursuant to T.C.A §36-6-101(a)(1) courts may change custody "as the exigencies of the case may require." When a non-custodial parent seeks a change in custody, that party bears the burden of showing that the child's circumstances have materially changed in a way that could not have been foreseen at the time of the original determination of custody, and that the best interest of the child will be served by a change of custody. *Musselman v. Acuff,* 826 S.W.2d 920 (Tenn. Ct. App. 1991). A court must first determine if there has been a material change in circumstance subsequent to the initial award of custody such that "the welfare of the child demands a redetermination of custody." *Caudill v. Foley,* 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999)(citing *Massengale v. Massengale,* 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995)). In the event that there has been a material change of circumstances, the court must then determine if a change of custody would be in the child's best interest. *Id.* (Citing *Varley v. Varley,* 934 S.W.2d 659, 665 -66 (Tenn. Ct. App. 1996)). However, the court is not required to make the best interest analysis where there has not been a material change in circumstances, and must deny the petition for a change in custody. *Id.*

A change of circumstances substantial to warrant a change of custody is defined "as that which requires a change to prevent substantial harm to the child." *Wall v. Wall,* 907 S.W.2d 829, 834 (Tenn. Ct. App. 1995). Custody is not changed for the welfare of either parent, nor is it changed to punish either parent. *Id.* A change of custody is not warranted by a showing that one parent is able to provide a more commodious or pleasant life style than the other, but where continued custody as adjudicated will substantially harm the child. *Id.*

Remarriage of either parent in and of itself does not constitute a material change in circumstances to warrant a change in custody. *Tortorich v. Erickson,* 675 S.W.2d 190, 192 (Tenn. Ct. App. 1984). However, the possible change in the home environment of the child caused by a remarriage is a factor to be weighed in determining whether there has been a material change in circumstances that would warrant a change in custody. *Id.* The character of persons who would be in position to influence a child is an important consideration for the court. *Id.* (Citing *Riddick v. Riddick,* 497 S.W.2d 740, 742 (Tenn Ct. App. 1973).

Modification of a prior custody decree is an extreme legal action, and not every change in circumstances will be sufficiently material to warrant a change in custody. *Brown v. Brown,* No. 02A01-9709-CV-00228, 1998 WL 760935, at *6 (Tenn. Ct. App. Nov. 2 1998) (citing *Eberhart v. Eberhart,* No. 03A01-9612-CV-00374, 1997 WL 406378 , at *2 (Tenn. Ct. App. July 22, 1997).

> No "hard and fast" rule exists as to what constitutes changed circumstances. *Dantzler v. Dantzler,* 665 S.W.2d 385, 387 (Tenn

App. 1983). The party seeking a change of custody, however, must prove that "some new fact has occurred which has altered the circumstances in a material way so that the welfare of the child requires a change of custody." *Griffin v. Stone,* 834 S.W.2d 300, 302 (Tenn. App. 1992). In order to be compelling enough to warrant the dramatic remedy of changed custody, the change of circumstances must be such that "continuation of the adjudicated custody will substantially harm the child." *Wall v. Wall,* 907 S.W.2d 829, 834 (Tenn. App. 1995). When the requested modification is based on the behavior of the custodial parent, such behavior must clearly posit or cause danger to the mental or emotional well-being of the child. *Musselman v. Acuff,* 826 S.W.2d at 924 (quoting *Ballard v. Ballard,* 434 So. 2d 1357, 1360 (Miss. 1983)).

*Brown,* at *7.

In the instant case, the trial court found that there were legitimate concerns regarding the home environment provided to Ashley since Mother's marriage to Wheatly, however the court found no evidence of a threat of danger to Ashley by continuing Mother's custody, stating:

> Now, this is a young girl and the proof shows that she's not in an ideal situation. She's going to be living there with her mother, who's run through three or four men, and none of them seemed to be very ideal and that couldn't be a good example for the girl. She's seen a lot of things that, if I had my way, wouldn't be going on
>
> *          *          *
>
> Mr. Richardson, he's not perfect either. I reviewed the evidence of the previous hearing and the findings are in the record about him. He's trying to straighten himself up and do the best he can. Seems to be doing pretty well.
>
> Now, there's no proof however, in this case, that the young lady is not doing pretty well, considering all of these disadvantages she's got. And there appear to be some compensations for the situation she's in. She's living in a rural area, which is very good for some people....The house, from what I can see in the video, looks like an attractive country type house. There's some benefits from that.
>
> So there's no evidence that she's not doing relatively well in the situation she's in. Apart from school, she has these other activities. The usual danger signs that I hear about at these trials are not present; staying out all night, doing drugs, or getting into trouble,

-4-

running with a bad crowd. Her stepfather is the worst crowd that she's around.

Now, the law says that stability in a child's life is very important. It's not the only thing for the Court to consider, but it is very important. And in this case, it seems to me that it should be the deciding factor, that as long as she's doing well as she's doing, the Court shouldn't interfere with that.

The record does reveal that Mother was aware that Wheatly had driven without a license, although she testified to the contrary. In addition, Wheatly perjured himself with regard to his driving without a license and his convictions. However, the proof failed to support Father's contention that Ashley had suffered from Mother's or Wheatly's lack of veracity. Although we cannot countenance perjury, there has been no showing that Mother is unfit as a parent or that a continuation of Mother's custody poses a threat of substantial harm to Ashley. Ashley is doing well in school, she has friends, participates in extra curricular activities, and appears to be settled in her current environment. The proof does not support Father's contention that Ashley's weight gain or her increased tendency to keep to herself is a result of Mother's custody. The only evidence in the record regarding the court ordered counseling for Ashley was given by Mother who testified at trial that Ashley did receive counseling and was reported by the counselor to have no psychological problems. Mother stated that Ashley had been released from treatment, because according to her psychologist, Ashley was no longer in need of individual counseling. Mother further testified that she had attempted to involve Ashley in family or joint counseling, however her efforts had been unsuccessful because Father had opposed joint counseling.

Father further contends that the separation of the siblings in this case is not in the best interest of Ashley. The separation of the siblings was ordered by the court in response to a prior petition for a change in custody in which Father sought custody of both children. He was granted custody of Allen only upon a finding that insufficient evidence was presented with regard to Ashley. In the order entered March 17, 1999, the trial court found that Allen was not doing well in Mother's custody, that he was failing in school and engaging in inappropriate and anti-social behavior which could become dangerous. The trial court found that under the circumstances it was in the best interest of Allen that he be placed in the custody of Father.

It is a well established principle in Tennessee in child custody cases that the best interest of a child is the overriding consideration. *Luke v. Luke,* 651 S.W.2d 219, 221 (Tenn. 1983). "Generally speaking, it is not appropriate to separate siblings by a custody order. *Baggett v. Baggett,* 512 S.W.2d 292, 293-94 (Tenn. App. 1973); but this principle is not inflexible. It must give way to other considerations if the best interest of a child so dictates." *Rice v. Rice,* 983 S.W.2d 680, 684 (Tenn. Ct. App. 1998). The preference for siblings to remain together is only one factor to consider in the court's determination of a child's best interest. *In re S.B.,* No. M1999-00140-COA-R3-CV, 2000 WL 575934, at *5 (Tenn. Ct. App. May 12, 2000) (citing *In the matter of M.W.A., Jr., C.D.A., K.M.A. and A.K.A.,* 980 S.W.2d 620, 623 (Tenn. Ct. App. 1998)). In addition, such

preference is not the controlling factor and courts have separated siblings where the separation was in the best interest of the child. *Id.* The recognition that children need stability and continuity in relationships has led to a presumption by courts in favor of continuity of placement. *See Taylor v. Taylor,* 849 S.W.2d 319, 328 (Tenn. 1993).

It is unfortunate that the record contains no report or testimony of Ashley's wishes concerning custody. It is the opinion of this Court that a child thirteen years of age, Ashley's age at the time of this trial, should be consulted to determine whether that child has a preference as to the custodial parent. If a preference does exist, such preference should be weighed along with other relevant factors in making a determination of the child's best interest. T.C.A. § 36-6-106 (7) (2000 Supp.) Upon a review of the evidence that was presented, it appears that the two minor children involved have very different characters and vastly different needs. We do not believe that keeping these siblings together overrides maintaining continuity of placement.

The evidence does not preponderate against the trial court's findings that there is no material change of circumstances warranting a change of custody. Accordingly, the order of the trial court is affirmed. This case is remanded to the trial court for such further proceedings as may be necessary. Cost of this appeal are assessed against Appellant, Robert Keith Richardson, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.