IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 2, 2001 Session

# IN THE MATTER OF: HANNAH GAYLE PARLOW

**A Direct Appeal from the Juvenile Court for Shelby County**
**No. K6666     The Honorable George E. Blancett, Special Judge**

---

**No. W2000-01462-COA-R3-CV - Filed June 14, 2001**

---

After paternity was established and Mother was granted custody of minor daughter, Father filed petition to change custody on the ground of material change of circumstances consisting of Mother's remarriage to an allegedly violent man, and Mother's intention to move with the child out of the state. The juvenile referee denied the petition and, upon a de novo trial before a special juvenile judge of the juvenile court, Father's petition was denied. Father has appealed. We affirm.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and ALAN E. GLENN, J., joined.

William Bryan Penn, Memphis, For Appellant, Timothy F. Parlow

Richard M. Murrell, Memphis, For Appellee, Eden Nicole Clifton

**OPINION**

On May 11, 1999, petitioner, Timothy F. Parlow ("Father"), filed a petition against defendant, Eden Nichole Davis (Mother), to establish paternity and his parentage of Hannah Gayle Johnson, born July 24, 1997. After a hearing, the juvenile court entered its decree which held that said child was a legitimate child of Father, that custody of said child be awarded to Mother, that Father pay all medical expenses incident to the child's birth, that no support be ordered by agreement of the parties, that Father shall provide medical insurance or alternatively be responsible for medical expenses, that the surname for the child be changed to that of the Father, and that the costs of the cause were adjudged against Father. The parties stipulated that in lieu of child support, Father agreed to pay for specific items for the child, including the cost of daycare provided by Father's sister.

On April 6, 2000, Father filed "Petition to Change Custody" alleging that Mother had remarried to an allegedly violent person who is a threat to the minor child, and that Mother had told Father that she intended to move with the child from the State of Tennessee. Father alleges that there has been a material change of circumstances and that the best interests of the child require that custody be changed.

After a nonjury trial, the juvenile court entered its order on May 25, 2000, which states:

> This cause came on before the Honorable George E. Blancett, Special Judge, Juvenile Court of Memphis and Shelby County, Tennessee, and upon testimony and the entire record the Court finds that said child should remain in the custody of her mother.
>
> IT IS THEREFORE ORDERED
>
> 1. That said child shall remain in the custody of her mother, Eden Nicole Davis Johnson, to reside in the State of Virginia.
>
> 2. That the father of said child, Timothy Frederick Parlow, shall pay $279.30 monthly, fee included, to the Central Child Support Receipting Unit, toward the support of said child, beginning May 1, 2000. Unless specifically ordered, support shall not be reduced nor prorated.
>
> 3. That the father of said child shall provide medical insurance for the minor child and the parties shall split the medical expenses not covered by insurance.
>
> 4. That the father of said child shall have visitation privileges with said child as follows:
>
> A. Prior to said child attending school starting with kindergarten, he shall have the child as follows:
>
>> (1) for two week visits three (3) times each year. Each two week visit shall be separated from the other by at least ten (10) weeks. These visits shall not be exercised during the months of December or January.
>>
>> (2) Each year from December 26 until January 8.
>
> B. When the child begins school at kindergarten, the child shall visit with her father as follows:

(1) For four weeks visit each summer commencing after the close of the school year and ending at least one week before school resumes.

(2) Each year from December 26 until January 8.

(3) The child shall visit each year with the father during the school's spring break beginning the first Sunday after break begins, and to return to the mother at least one day prior to school resuming. In either event, the father shall give the mother at least four (4) weeks notice of intended visit period unless waived by the mother.

C. In the event the mother visits Memphis or the father travels to the city of the mother's residence to visit, the father shall be allowed reasonable visitation at said location for at least two nights of each week visit.

D. The father shall pay the cost of the child's transportation to Memphis and the mother shall pay the cost of the child's transportation back to the mother's home.

E. The parental bill of rights pursuant to Tenn. Code Ann. § 36-6-110 (a) shall be included in this order by reference. Jurisdiction for enforcement and modification of this order shall remain in the State of Tennessee.

5. That the father of said child, Timothy Frederick Parlow, shall pay an additional fee to the mother's attorney, Richard Murrell, in the amount of $750.00 and that the $1,000.00 fee awarded April 13, 2000 be reconfirmed.

Father has appealed and presents three issues for review as stated in his brief:

1. Whether there was proper disposition of the mother's relocation with the child pursuant to Tenn. Code Ann. § 36-6-108.

2. Whether visitation was sufficient to protect Appellant's rights of due process and parentage under the Tennessee and United States Constitutions.

3. Whether the court properly disposed of the dependency and neglect issues.

Appellee has also listed a "Statement of the Issues for Review" in her brief, but it appears that these are in reality responses to the issues and arguments presented by the appellant. Accordingly, we will not consider these as issues for specific treatment.

Appellant's first issue is stated as: Whether there was proper disposition of the mother's relocation with the child pursuant to Tenn. Code Ann. § 36-6-108.

Although Father's petition did not make specific reference to the parental relocation statute, T.C.A. § 36-6-108 (Supp. 2000), Father apparently was treating his petition as opposition to Mother's proposed relocation. We note, however, that neither party complied with the provisions of the relocation statute.[1] Father asserts that this case is controlled by subsection (c) of the statute

---

[1] § 36-6-108. Parent relocation

(a) If a parent who is spending intervals of time with a child desires to relocate outside the state or more than one hundred (100) miles from the other parent within the state, the relocating parent shall send a notice to the other parent at the other parent's last known address by registered or certified mail. Unless excused by the court for exigent circumstances, the notice shall be mailed not later than sixty (60) days prior to the move. The notice shall contain the following:

(1) Statement of intent to move;

(2) Location of proposed new residence;

(3) Reasons for proposed relocation; and

(4) Statement that the other parent may file a petition in opposition to the move within thirty (30) days of receipt of the notice.

(b) Unless the parents can agree on a new visitation schedule, the relocating parent shall file a petition seeking to alter visitation. The court shall consider all relevant factors, including those factors enumerated within subsection (d). The court shall also consider the availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent. The court shall assess the costs of transporting the child for visitation and determine whether a deviation from the child support guidelines should be considered in light of all factors including, but not limited to, additional costs incurred for transporting the child for visitation.

(c) If the parents are actually spending substantially equal intervals of time with the child and the relocating parent seeks to move with the child, the other parent may, within thirty (30) days of receipt of notice, file a petition in opposition to removal of the child. No presumption in favor of or against the request to relocate with the child shall arise. The court shall determine whether or not to permit relocation of the child based upon the best interests of the child. The court shall consider all relevant factors including the following where applicable:

(1) The extent to which visitation rights have been allowed and exercised;

(continued ...)

(2) Whether the primary residential parent, once out of the jurisdiction, is likely to comply with any new visitation arrangement;

(3) The love, affection and emotional ties existing between the parents and child;

(4) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(5) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(6) The stability of the family unit of the parents;

(7) The mental and physical health of the parents;

(8) The home, school and community record of the child;

(9) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(10) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; and

(11) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child.

(d) If the parents are not actually spending substantially equal intervals of time with the child and the parent spending the greater amount of time with the child proposes to relocate with the child, the other parent may, within thirty (30) days of receipt of the notice, file a petition in opposition to removal of the child. The other parent may not attempt to relocate with the child unless expressly authorized to do so by the court pursuant to a change of custody or primary custodial responsibility. The parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds:

(1) The relocation does not have a reasonable purpose;

(2) The relocation would pose a threat of specific and serious harm to the child which outweighs the threat of harm to the child of a change of custody; or

(3) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

Specific and serious harm to the child includes, but is not limited to, the following:

(1) If a parent wishes to take a child with a serious medical problem to an area where no adequate treatment is readily available;

(2) If a parent wishes to take a child with specific educational requirements to an area with no acceptable education facilities;

(continued...)

-5-

(3) If a parent wishes to relocate and take up residence with a person with a history of child or domestic abuse or who is currently abusing alcohol or other drugs;

(4) If the child relies on the parent not relocating who provides emotional support, nurturing and development such that removal would result in severe emotional detriment to the child;

(5) If the custodial parent is emotionally disturbed or dependent such that the custodial parent is not capable of adequately parenting the child in the absence of support systems currently in place in this state, and such support system is not available at the proposed relocation site; or

(6) If the proposed relocation is to a foreign country whose public policy does not normally enforce the visitation rights of non-custodial parents, which does not have an adequately functioning legal system or which otherwise presents a substantial risk of specific and serious harm to the child.

(e) If the court finds one (1) or more of the grounds designated in subsection (d), the court shall determine whether or not to permit relocation of the child based on the best interest of the child. If the court finds it is not in the best interests of the child to relocate as defined herein, but the parent with whom the child resides the majority of the time elects to relocate, the court shall make a custody determination and shall consider all relevant factors including the following where applicable:

(1) The extent to which visitation rights have been allowed and exercised;

(2) Whether the primary residential parent, once out of the jurisdiction, is likely to comply with any new visitation arrangement;

(3) The love, affection and emotional ties existing between the parents and child;

(4) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(5) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(6) The stability of the family unit of the parents;

(7) The mental and physical health of the parents;

(8) The home, school and community record of the child;

(9) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(10) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; and

(11) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child.

(continued...)

relating to parents that spend substantially equal intervals of time with the child. On the other hand, Mother asserts that they do not spend substantially equal intervals of time with the child, that she spends the greater amount of time and under these circumstances, and that subsection (d) of the statute controls. Mother was granted custody of the child initially and has retained custody throughout the child's life. Moreover, a review of the record reveals that while Father had liberal visitation, it did not rise to an equal interval of time with the child. Accordingly, if the statute is applied, subsection (d) would be the correct standard for the trial court to apply.

Although the trial court did not make specific findings of fact in the order appealed, the trial court did state from the bench that it found no spousal abuse on the part of Mother's spouse and that the majority of the evidence offered adverse to Mother's ability to care for the child has been with regard to her relationships with other people. There was no evidence that she was subjecting the child to undesirable elements or otherwise not taking care of the child. The court opined that the referee made the correct decision in not changing custody from Mother to Father. The court further stated that it found no evidence of any malice on the part of Mother in wanting to move with the child out of state. The court showed concern as to the uncertainness of employment of Mother's husband and their living arrangements in their proposed move. Accordingly, the court instructed the parties to furnish additional information concerning the final plans, and the court would hold the matter in abeyance until this was done. As noted, the court's order was entered May 25, 2000, allowing Mother to move with the child to the State of Virginia. The record is silent as to any further information furnished to the court and we must therefore assume that the parties satisfactorily complied with the court's instructions since the court entered the order allowing the move.

From our review of the record, it appears that the trial court made a determination from the entire body of proof that Mother's proposed relocation is not adverse to the best interests of the child, as required by T.C.A. § 36-6-108 (c). While Mother had formerly been an exotic dancer, there was no proof that her occupation had an unfavorable effect on the child. Moreover, Mother was engaged in this occupation at the time custody was first awarded and had actually ceased such occupation prior to Father filing his petition. Father presented some proof concerning what he termed as abuse by Mother's boyfriend, who later became her husband, but this proof was refuted by proof presented

---

[1](...continued)

The court shall consider the availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent. The court shall assess the costs of transporting the child for visitation, and determine whether a deviation from the child support guidelines should be considered in light of all factors including, but not limited to, additional costs incurred for transporting the child for visitation.

(f) Nothing in this section shall prohibit either parent from petitioning the court at any time to address issues, (such as, but not limited to visitation), other than a change of custody related to the move. In the event no petition in opposition to a proposed relocation is filed within thirty (30) days of receipt of the notice, the parent proposing to relocate with the child shall be permitted to do so.

(g) It is the legislative intent that the gender of the parent who seeks to relocate for the reason of career, educational, professional, or job opportunities, or otherwise, shall not be a factor in favor or against the relocation of such parent with the child.

by Mother which was accredited by the trial court. The proof established that Father had been allowed liberal visitation rights and that Mother would comply with any new visitation arrangements necessary. Both parties show love and affection for the child and their disposition to provide the necessaries for the child. The child had been in the custody of Mother since her birth, and Mother has provided a stable environment, notwithstanding her frequent changes of occupation. Mother had remarried near the time Father's petition was filed and appears to have a stable family unit. Both parents appear to be in good physical and mental health, and there simply was no evidence of any emotional or physical abuse to the child or anyone else. Judging from the remarks of the trial court from the bench, it appears that, simply stated, Father did not prove that the move with Mother would be adverse to the best interests of the child. The evidence preponderates in favor of the trial court's determination.

The second issue for review, as stated in Father's brief, is:

> 2. Whether visitation was sufficient to protect Appellant's rights of due process and parentage under the Tennessee and United States Constitutions.

Father has failed to specifically point out just how his due process rights have been violated. The record reflects that the trial court suggested, and counsel for both parties agreed, that the parties could probably work out their visitation arrangements. The trial court set out liberal visitation rights in the final order, and Father has not complained about the extent of the visitation rights. Father's complaint in his brief is that "the relocation of Hannah deprives him of the opportunity to raise and provide appropriate guidance to Hannah. In essence, relocation effectively terminates appellant's parental rights." As we have previously noted, Father was granted liberal visitation rights and apparently is not complaining that he has not been granted such rights.

In *Nale v. Robertson*, 871 S.W.2d 674 (Tenn. 1994), the Court said:

> Parents, including parents of children born out of wedlock, have a fundamental liberty interest in the care and custody of their children under both the United States and Tennessee Constitutions. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993). However, this right is not absolute and the State may interfere with parental rights if there is a compelling State interest. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Hawk v. Hawk*, 855 S.W.2d at 579.

*Id.* at 678. The United States Supreme Court noted in *Santosky*, that one of the interests at stake was "a *parens patriae* interest in preserving and promoting the welfare of the child." 455 U.S. at 766.

While we recognize Father's fundamental right, the situation presented to us is the lack of a two-parent family unit. With the competing interests of one parent against the other, the state must allow courts to step in to resolve the differences. In *Pizzillo v. Pizzillo*, 884 S.W.2d 749 (Tenn. Ct. App. 1994), this Court said:

> Child custody and visitation disputes require the courts to focus on the welfare and best interests the child. *Lentz v. Lentz*, 717 S.W.2d 876, 877 (Tenn. 1986); *Luke v. Luke,* 651 S.W.2d 219, 221 (Tenn. 1983). While the parents' respective rights and desires are secondary in these proceedings; *Doles v. Doles*, 848 S.W.2d 656, 661 (Tenn. Ct. App. 1992); *Griffin v. Stone*, 834 S.W.2d 300, 302 (Tenn. Ct. App. 1992), they should not be ignored. *Neely v. Neely*, 737 S.W.2d 539, 542 (Tenn. Ct. App. 1987).

> A child's interests are well-served by a custody and visitation arrangement that promotes the development of relationships with both the custodial and the noncustodial parent. *Rogero v. Pitt*, 759 S.W.2d 109, 112 (Tenn. 1988)(relationship with both parents); *Bryan v. Bryan*, 620 S.W.2d 85, 88 (Tenn. Ct. App. 1981) (relationship with a noncustodial parent); *Dillow v. Dillow*, 575 S.W.2d 289, 291 (Tenn. Ct. App. 1978) (relationship with a noncustodial parent). Thus, the court's should devise custody and visitation arrangements that interfere with each parent's relationship with his or her child as little as possible.

*Id.* at 755 (citations omitted). Accordingly, Father was not deprived of any due process rights.

The last issue for review, as stated in Father's brief, is

> 3. Whether the court properly disposed of the dependency and neglect issues.

Father made no argument concerning this issue which was presented as one of the three issues for review. Accordingly, we will not address this issue.

Father did, however, present a third issue in the argument section of his brief which is stated in the brief as:

> The Juvenile Court of Shelby County, Tennessee abused its judicial discretion by excluding the evidence of the appellee's behavior of the time before appellant established paternity and issues of abuse.

In this issue, Father asserts that the trial court erred in excluding evidence of the appellee's behavior during the period before the entry of the original order granting her custody of the child. We have searched the transcript of the trial testimony from beginning to end and find that at no part of the trial did Father make an offer of proof of any allegedly excluded evidence. In the absence of a statement of the substance of the evidence or an offer of proof, the issue as to the propriety of the exclusion of evidence is not reviewable on appeal. *See* Tenn.R.Evid. 103 (a)(2); ***Rutherford v. Rutherford***, 971 S.W.2d 955 (Tenn. Ct. App. 1997).

Should we have overlooked an offer of proof, we should also note that if the matters excluded were limited entirely to the period preceding the original order of custody, the trial court correctly excluded the evidence. Child custody and visitation decisions once made and implemented are *res judicata* upon the facts in existence or reasonably foreseeable when the decision was made. ***See Adelsperger v. Adelsperger***, 970 S.W.2d 482 (Tenn. Ct. App. 1997).

The order of the juvenile court is affirmed, and the case is remanded to the juvenile court for such further proceedings as may be necessary. Costs of the appeal are assessed against appellant, Timothy F. Parlow, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.