**PINSON & ASSOCIATES INSURANCE AGENCY, INC., Plaintiff–Appellee,**

v.

**Stephen M. KREAL, Defendant–Appellant.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Aug. 22, 1990.

Application for Permission to Appeal Denied by Supreme Court Nov. 13, 1990.

Robert E. Boston, Christopher M. Goffinet, Waller, Lansden, Dortch & Davis, Nashville, for plaintiff-appellee.

Jay S. Bowen, Bass, Berry & Sims, Nashville, for defendant-appellant.

OPINION

CANTRELL, Judge.

This is a dispute over the terms of an agreement to share commissions generated by the sale of health benefits insurance. The appellant also contests the chancellor's award of damages based on an estimate of future renewals.

The plaintiff, Pinson & Associates Insurance Agency, Inc., is an agency in Nashville primarily engaged in writing property and casualty insurance. The defendant,

Stephen M. Kreal, is a broker of health, life, and benefits insurance. In 1985, Maurice Pinson of Pinson & Associates orally agreed to furnish Mr. Kreal office space, secretarial services, and access to the names of Pinson's property and casualty customers in exchange for one-half of the commissions Kreal would receive on sales of health, life and benefits insurance to Pinson's customers.

This arrangement lasted until July of 1987 when Kreal left his office at the Pinson Agency and started operating out of his home. He also ceased splitting commissions with Pinson on any business generated through the association with Pinson.

Pinson brought this action for damages for breach of the oral agreement. After a bench trial in the court below, the chancellor found that Kreal was obligated to continue paying Pinson one-half of the commissions earned from business generated through the association with Pinson. The chancellor awarded a judgment for the amounts due through May of 1989, plus the amounts that could be expected to accrue over the next ten years, discounted to present value.

### The Agreement

The parties agreed that up until the time Kreal left his office at Pinson he was obligated to pay one-half of any commissions earned on sales to customers derived through his association with Pinson. The dispute in this case is whether that obligation ended when the active association ended. Neither party argues that they had an express understanding pertaining to the duration of the agreement. Each party relies on the fact that the duration was unstated. Kreal argues that since the duration of the contract was not agreed to, the obligation to share commissions ended when he left the agency. Maurice Pinson said he understood that the original agreement was permanent. At least, he said, they did not agree that it would terminate at any point.

■ The purpose of the courts in interpreting a contract is to arrive at the intention of the parties. *Pearsall Motors, Inc.*

*v. Regal Chrysler Plymouth, Inc.*, 521 S.W.2d 578 (Tenn.1975). To arrive at that intention it is permissible to consider the circumstances of the parties at the time the contract was formed, *Hamblen County v. City of Morristown*, 656 S.W.2d 331 (Tenn. 1983), and an unexpressed obligation will be implied when it is clear it was intended. *Id. E.O. Bailey & Co. v. Union Planters Title Guar. Co.*, 33 Tenn.App. 439, 232 S.W.2d 309 (1949). The course of conduct of the parties is the strongest evidence of their original intent. *Frierson v. Int'l Agric. Corp.*, 24 Tenn.App. 616, 148 S.W.2d 27 (1940).

■ Applying these principles to the case before us, we are persuaded that the chancellor properly concluded that the obligation of Mr. Kreal to split the commissions with Pinson continued beyond the date Mr. Kreal left the agency. Rather than supporting an implied condition that would terminate the obligation, the circumstances surrounding the making of the agreement, the action of the parties during the two year association, and Mr. Kreal's actions after he left the agency indicate an intent to share commissions on renewal premiums paid by customers first obtained through the Pinson Agency.

Maurice Pinson testified that it would not have been to his advantage to introduce Mr. Kreal to Pinson's customers if Kreal were free to leave at any time and take the business with him. We think that is a reasonable position. Under Mr. Kreal's version of the agreement, he was under no obligation to stay for any length of time and could have, at any time, terminated the relationship without any further obligation on his part.

The course of conduct of the parties is also instructive. For the two years Mr. Kreal stayed at the agency he routinely shared the renewal commissions with Pinson. Even after July 1, 1987, he shared the commissions on certain renewal premiums and insisted on the fifty/fifty split in cases where the premiums had been paid to Pinson.

Mr. Kreal argues that a major portion of the consideration for the agreement to split the commission was Pinson's agreement to furnish office space and a secretary. We fail to see however how his voluntary relinquishment of that part of the consideration could relieve him of his obligation to honor the remainder of the agreement.

## Damages

The chancellor's award of damages is broken down into three parts. The first is for Pinson's share of the commission's earned but unpaid through May of 1989 on benefits policies written for Pinson's customers. That figure came to $26,597.14. The second part consists of Pinson's share of the commissions to be earned in the future on those same policies. In making this calculation the court assumed that the commissions earned at the time of the trial would decline to zero over a ten year period. Reducing that figure to its present value yielded a figure of $23,929.89. The third part of the judgment consists of an award for any accrued and future commissions on policies written for individuals employed by Anglo–American Auto Auction, by far the largest of the Pinson customers served by Mr. Kreal. Using the same calculations to arrive at the present value of the future commissions, the court awarded Pinson $30,809.00 for this part.

■ The appellant argues that the amount of the damages allowed for future commissions is based on pure speculation that cannot be allowed to stand. *See Nashland Associates v. Shumate*, 730 S.W.2d 332 (Tenn.App.1987). While it is true that speculative damages cannot be recovered, in the sense that the fact of damage is uncertain, contingent or speculative, *Maple Manor Hotel, Inc. v. Metropolitan Govt. of Nashville and Davidson County*, 543 S.W.2d 593 (Tenn.App.1976), "mere uncertainty as to the amount will not prevent recovery if the evidence is of such certainty as the nature of the case permits and such as to lay a foundation enabling the trier of fact to make a fair and reasonable assessment of damages." *Wilson v. Farmer's*

*Chem. Ass'n*, 60 Tenn.App. 102, 444 S.W.2d 185, 189 (1985).

■ We are of the opinion that the fact of damages in this case is not speculative. From the record it is reasonably certain that the defendant will owe the plaintiff some amount from the commissions earned in the future. Therefore, the claim for damages should not be dismissed.

The question remains, however, if the proof in this case is sufficient to enable the trier of fact to make a "fair and reasonable assessment of damages."

As to that question we are persuaded that the chancellor's findings are supported by evidence in the record and that the findings give a basis on which to make the award.

Courts will allow damages for breach of contract even where it is impossible to prove the exact amount of damages. *Provident Life & Accident Ins. Co. v. Globe Indemnity Co.*, 156 Tenn. 571, 576, 3 S.W.2d 1057, 1058 (1928). All that is required is proof with a reasonable degree of certainty. *Buice v. Scruggs Equipment Co.*, 37 Tenn.App. 556, 571, 267 S.W.2d 119, 125–26 (1953).

In this case the uncontradicted proof shows that the renewal rate for benefits insurance is approximately ninety percent annually. This figure also complies with the experience of the Pinson Agency. Knowing the amount of commissions earned in the first year and the proper interest rate to apply, the trier of fact can calculate the present value of the amounts that will come due in the future.

Kreal's objection to the damage award is based solely on the fact that any or all of the policies may be cancelled at any time. If that happens, the plaintiff will get a windfall and Kreal will have paid a judgment for which he should not have been liable. We are persuaded, however, that the uncertainty in arriving at the proper amount of the judgment in this case is no greater than the uncertainty that exists in many cases involving future events or lost opportunities. *See Chisholm & Moore Mfg. Co. v. U.S. Canopy Co.*, 111 Tenn. 202, 77 S.W. 1062 (1903) (lost profits);

*Cummins v. Brodie,* 667 S.W.2d 759 (Tenn. App.1983) (cancelled public performances); *Ford Motor Co. v. Taylor,* 60 Tenn.App. 271, 446 S.W.2d 521 (1964) (a lost crop).

We have considered setting aside the amount of the judgment and ordering the defendant to account to the plaintiff each year for the commissions collected during that year. In that way the uncertainty about the proper amount of the judgment would be removed. While that alternative is certainly appealing, the plaintiff did not bring this action as one for an accounting and we see no reason to substitute our judgment for that of the plaintiff or of the chancellor. This is a common law action for damages for a breach of contract. The plaintiff is entitled to a judgment based on the pleadings and the proof. The amount is based on proof to a reasonable degree of certainty. Therefore, we see no reason to disturb the judgment.

The judgment of the court below is affirmed and the cause is remanded to the Chancery Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant.

LEWIS and KOCH, JJ., concur.