# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

MARTIN SILVA,          )

        )

    Plaintiff/Appellee,   )  **Davidson Chancery No. 95-2607-II**

        )

VS.            )  **Appeal No. 01A01-9604-CH-00153**

        )

**JAMES A. CROSSMAN**    )

**d/b/a JIM CROSSMAN REALTY,**   )

        )

    Defendant/Appellant.  )

## APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY
### AT NASHVILLE, TENNESSEE
### THE HONORABLE ELLEN HOBBS LYLE, CHANCELLOR

**FILED**

**November 1, 1996**

**Cecil W. Crowson**
**Appellate Court Clerk**

**ROBERT J. NOTESTINE, III**
Nashville, Tennessee
Attorney for Appellant

**MICHAEL SNEED**
Nashville, Tennessee
Attorney for Appellee

**AFFIRMED**

                  **ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

This appeal involves a dispute as to the obligations of the parties under a lease agreement. The lessor of the premises, James A. Crossman, terminated the lease after discovering that the lessee, Martin Silva, had experienced problems with violence and other criminal activities at the previous location of his nightclub. Silva filed a complaint in the Chancery Court for Davidson County seeking damages for breach of the lease contract. The trial court heard the case without a jury and awarded damages to Silva. Crossman has appealed and argues that the trial court erred in failing to find grounds for rescission of the lease and in awarding damages to Silva. For the reasons stated below, we affirm the judgment.

## I.

Since 1992, Martin Silva has owned and operated a hispanic nightclub called "El Huarache" on Ewing Street in Nashville, Tennessee. In the late spring of 1995, Silva decided to relocate the nightclub from Ewing Street to a building with more space. One of Silva's representatives contacted Crossman's leasing agent, Leslie Pomeroy, regarding a piece of commercial property listed by Crossman that was located at 514 Ash Street in Nashville.

It is undisputed that Crossman and Pomeroy knew that Silva intended to use the property as a nightclub. However, neither Crossman nor Pomeroy performed any type of background check on him. It is also undisputed that Pomeroy did not ask Silva's representative whether there had been any problems with violence or other criminal activities at El Huarache and that Silva's representative did not volunteer any information of this nature. The lease was executed on July 10, 1995.

Several days later, Crossman began to receive calls from existing tenants at the Ash Street location objecting to Silva's lease of the premises for his nightclub. As a result of these calls, Crossman ordered a police report listing the number and description of police calls to El Huarache. The police report revealed that there had been 73 police calls to El Huarache, several of which involved violent crimes. By letter dated July 27, 1995,

2

Crossman's attorney notified Silva that the lease was terminated on grounds that Silva failed to disclose the problems with criminal conduct on the premises. Crossman returned Silva's deposit to him, and Silva vacated the premises.

Silva filed this action on August 24, 1995, seeking damages or, in the alternative, specific performance as a result of Crossman's breach of the lease. In his answer, Crossman denied that he breached the lease and counterclaimed for rescission of the lease on the basis of fraudulent concealment.

Following a hearing, the trial court concluded that Crossman was in breach of the lease agreement. In his findings of fact, the trial court noted that neither Silva nor his representatives fraudulently concealed any information as they were not asked about and had no duty to provide information relating to problems with criminal activity at El Huarache. The trial court denied Silva's request for specific performance and declined to award Silva damages for lost profits on the basis that such damages were too speculative. The trial court did, however, allow Silva to recover $3,500.00 for renovation costs, $900.00 for his increased rent, $1,000.00 for his travel expenses to Chicago, and $7,000.00 that Silva paid to book two bands for opening night.

Crossman has raised two issues for our consideration on appeal. First, Crossman asserts that the trial court erred in failing to find that Silva's intentionally withholding pertinent information from Crossman's agent was grounds for rescission of the lease. Second, Crossman contends that Silva failed to prove his damages with reasonable certainty.

II.

Our scope of review of this case is governed by T.R.A.P. 13(d), which mandates that review of findings of fact by the trial court shall be *de novo* upon the record, accompanied by a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise. Foster v. Bue, 749 S.W.2d 736, 741 (Tenn. 1988).

3

**A.**

The law in Tennessee provides that misrepresentation may be grounds for rescission of a contract where the evidence shows that:

> (1) there is an assertion that is not in accord with facts, (2) the assertion [is] either fraudulent or material, (3) the assertion [is] relied upon by the recipient in manifesting assent, and (4) the reliance of the recipient [is] justified....A persons' nondisclosure of a fact known to him is equivalent to an assertion that the fact does not exist where he knows that disclosure of the fact would correct a mistake of the other party as to a basic assumption on which that party is making a contract and if nondisclosure of the fact amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.

Scruggs v. Roach, No. 03A01-9209-CH-00358, 1993 WL 93362, at *4 (Tenn. App. March 31, 1993)(internal citations omitted).

Liability for concealment or nondisclosure will arise only where a party has a duty to disclose the material facts at issue. Wyner v. Athens Utilities Board, 821 S.W.2d 597, 599 (Tenn. App. 1988). A duty to disclose exists where:

> 1. [T]here is a previous definite fiduciary relation between the parties.
> 2. [I]t appears one or each of the parties to the contract expressly reposes a trust and confidence in the other.
> 3. [T]he contract or transaction is intrinsically fiduciary and calls for perfect good faith....

Macon Cty. Livestock Mkt. v. Kentucky State Bank, 724 S.W.2d 343, 349 (Tenn. App. 1986)(quoting Domestic Sewing Machine Co. v. Jackson, 83 Tenn. 418, 424-25 (1885).

In the present case, there was no fiduciary or other relationship of trust and confidence between the parties. The facts before us indicate, without dispute, that this was an arms-length transaction. Moreover, the number of police calls to Silva's nightclub was a matter of public record that could have been ascertained by Crossman prior to the execution of the lease. Consequently, we do not find that the evidence preponderates against the trial court's determination that Silva had no duty to disclose the subject information.

**B.**

Crossman's second issue is whether the trial court erred in assessing damages at

$12,400.00 when Silva failed to prove with reasonable certainty the existence and the amount of his damages.

Although damages may be allowed for breach of contract even though the exact amount is not proved, damages must nevertheless be proved to a reasonable degree of certainty. Pinson & Assoc. Ins. Agency, Inc. v. Kreal, 800 S.W.2d 486, 488 (Tenn. App. 1990). The requirement that damages be proved with reasonable certainty does not require mathematical precision, but only requires enough proof to enable the trier of fact to make a fair and reasonable assessment. Id. at 488. It is a fundamental tenet of Tennessee law that courts will not award speculative or uncertain damages. Nashland Assocs. v. Shumate, 730 S.W.2d 332, 334 (Tenn. App. 1987). When anticipated lost profits are too speculative, an aggrieved party may recover based on his or her reliance interest, which includes "expenditures made in preparation for performance or in performance...." RESTATEMENT (SECOND) OF CONTRACTS, Sec. 349 (1979).

Silva testified as follows with respect to his damages. He spent $3,500.00 for various renovations that were approved by Crossman and evinced in the lease agreement. In preparation for the opening of the new location, Silva traveled to Chicago to purchase a mechanical bull for $5,000.00. He testified that his travel expenses were approximately $1,000.00, although he did not have a receipt or a canceled check to confirm these expenses. Silva also testified that he contracted with two Mexican bands to play on opening night. Because his lease was terminated, however, he was forced to cancel the bookings. Silva stated that he paid the bands $7,000.00 in cash, and that he did not have a receipt or a canceled check. In order to remain at his old location, Silva's rent increased by $150.00 a month. Finally, Silva presented testimony relating to what he estimated that he lost in profits due to his inability to open the club on Ash Street.

Where issues of credibility and weight of testimony are involved and the trial judge has observed and listened to the witnesses, considerable deference must be afforded to the trial court's findings because the trial judge is in the best position to evaluate credibility.

5

Tenn-Tex Properties v. Brownell-Electro, Inc., 778 S.W.2d 423, 425-26 (Tenn. 1989).

The trial judge in this case had the opportunity to observe Silva and to assess his credibility as he testified regarding the damages that he allegedly suffered. In the absence of any evidence in the record to the contrary, we are not inclined to disburb the trial judge's findings in this regard. The trial judge properly disallowed recovery for speculative lost profits and arrived at a figure that is reasonable and entirely consistent with both the evidence presented at trial and the applicable law.

Accordingly, the judgment of the trial court is affirmed. Costs on appeal are adjudged against appellant.

_____
HIGHERS, J.

CONCUR:


_____
CRAWFORD, P.J., W.S.


_____
LILLARD, J.